**FILED**
**Apr 14, 2020**
**10:57 AM(ET)**
TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIMS



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT CHATTANOOGA

| | |
|---|---|
| **Amber M. Randall,** | )   **Docket No.: 2019-01-0763** |
|      **Employee,** | ) |
| **v.** | ) |
| **New York Pizza Department, Inc.,** | )   **State File No.: 101127-2019** |
|      **Employer,** | ) |
| **and** | ) |
| **Property and Casualty Ins. Co. of** | )   **Judge Thomas Wyatt** |
| **Hartford,** | ) |
|      **Carrier.** | |

---

## EXPEDITED HEARING ORDER FOR MEDICAL AND TEMPORARY DISABILITY BENEFITS
### *(DECISION ON THE RECORD)*

---

This case came before the Court on April 14, 2020, on Ms. Randall's request for medical and temporary disability benefits. New York Pizza Department, Inc. (NYPD) urged the Court to deny benefits on grounds of insufficient proof of causation and because Ms. Randall's injury is idiopathic. The Court held an on-the-record hearing and, for the reasons below, holds Ms. Randall would likely prevail at a hearing on the merits regarding her requests.

### History of Claim

Ms. Randall worked as a manager for NYPD. On July 11, 2019, she suffered a right-knee injury that she described by affidavit as follows:

> I had a pizza in my hand, I turned to my right to head to the cooler to get
> marinara sauce for the pizza. As I was turning to the right and putting my
> foot down, I felt a pop in my right knee as I landed on my foot.

Ms. Randall provided a photograph of the area in NYPD's kitchen where she was injured. She argued the cramped space and the fact that she turned her body while holding a pizza

1

caused her to step awkwardly and twist her knee. Ms. Randall testified that she felt immediate knee pain so severe that she required assistance to walk to the office. She did not return to work that night.

Ms. Randall sought care at Fast Access Healthcare the next day. A provider recorded a history of right-knee pain occurring the previous night without detailing the mechanism of injury. The provider treated her conservatively, and Ms. Randall returned to work. NYPD's owner reimbursed Ms. Randall for Fast Access's bill.

In early October, Ms. Randall told NYPD's owner that she needed additional treatment for worsening knee pain. The owner submitted a claim to NYPD's carrier, which authorized Ms. Randall to return to Fast Access. The carrier then authorized an MRI, which revealed a partially torn anterior cruciate ligament, a large bucket-handle tear of the medial collateral ligament (MCL), and that a fragment from the torn MCL had lodged in the intercondylar notch. At the visit when Ms. Randall learned the MRI results, Fast Access recorded that her knee injury occurred when she "twisted wrong at work."

Fast Access referred Ms. Randall to orthopedic surgeon Dr. John Chrostowski. Dr. Chrostowski recommended surgery due to the MRI findings and took Ms. Randall off work until December 2. Shortly afterward, the carrier denied further medical benefits, stating that the injury was idiopathic. Ms. Randall has not worked since she saw Dr. Chrostowski on October 23.

In support of her claim, Ms. Randall submitted a March 23, 2020 statement from Dr. Chrostowski that stated:

> [I]t is my opinion within a reasonable degree of medical certainty and considering all causes, that Ms. Randall's right lower extremity injuries and the aggravation of any right lower extremity pre-existing conditions, which she suffered about July 11, 2019, arose primarily out of and in the course and scope of her employment with [NYPD], and that the employment contributed to more than 50% in causing Ms. Randall's right knee injuries and the need for medical treatment.

Dr. Chrostowski also wrote that Ms. Randall was not at maximum medical improvement because she had not undergone surgery. He further stated that Ms. Randall remained under the off-work restriction he gave on October 23, and that would continue until she has surgery.

Ms. Randall also submitted bills from Fast Access totaling $413 and from Dr. Chrostowski for $237. NYPD has not paid temporary disability benefits.

Regarding Ms. Randall's earnings in the fifty-two weeks before her injury, NYPD

2

submitted a wage statement showing a salary of $650 per week. Ms. Randall challenged this with her 2019 W-2 from NYPD that she claimed showed she earned more than that.

## Findings of Fact and Conclusions of Law

At an Expedited Hearing, Ms. Randall must present sufficient evidence that she likely would prevail at a hearing on the merits. Tenn. Code Ann. § 50-6-239(d)(1) (2019); *McCord v. Advantage Human Resourcing,* 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015). Here, Ms. Randall must prove that the tears in her right knee arose primarily out of and in the course and scope of her employment. After thorough consideration of the evidence, the Court holds that Ms. Randall met her burden as to both medical and temporary disability benefits.

Ms. Randall testified that she experienced immediate pain when her knee twisted as she turned to the right with a pizza in her hand. A Fast Access provider corroborated this history by noting that Ms. Randall said her injury occurred when she "twisted [the knee] wrong at work." Dr. Chrostowski considered the description of injury in Ms. Randall's affidavit and unequivocally concluded that the twisting mechanism caused the need for surgery.

For its part, NYPD raised two defenses. First, it argued that Dr. Chrostowski did not himself record a history of the mechanism of Ms. Randall's injuries, and thus he did not have sufficient information to give a causation opinion. The evidence does not support NYPD's position. Rather, Dr. Chrostowski's statement makes clear that he was familiar with the mechanism of Ms. Randall's injury, including the description of injury she gave in her affidavit. The Court holds Dr. Chrostowski had sufficient information about the mechanism of Ms. Randall's injury to formulate a causation opinion.

NYPD next argued that Ms. Randall's injury was idiopathic, and thus it did not arise out of her employment. The Appeals Board held in *McCaffrey v. Cardinal Logistics,* 2015 TN Wrk. Comp. App. Bd. LEXIS 50, at *9 (Dec. 10, 2015), that an idiopathic injury is one of unexplained origin or cause and does not arise out of the employment unless a condition of the employment presents a peculiar hazard that causes injury. The Board in *McCaffrey* explained that determining whether an injury is idiopathic does not require the proximate-cause analysis of negligence cases, but instead involves a determination of whether the injury arose out of employment hazards.

Based on the evidence, the Court holds Ms. Randall's injury has a known origin— it occurred when her right knee "twisted wrong" as she turned and stepped to her right with a pizza in her hand. This mechanism of injury suggests an abnormal and unexpected bearing of weight on her right knee that distinguishes it from the cases where an employee suffers an idiopathic injury by simply walking. Further, the Court holds that the mechanism of working on one's feet and turning with a pizza in hand in a cramped

3

kitchen falls squarely within the risks to which the manager of a pizza restaurant is exposed. Thus, the Court holds that Ms. Randall will likely prevail at trial in showing that her injury was not idiopathic but arose primarily out of and in the course and scope of her employment.

The Court next considers whether Ms. Randall established her entitlement to medical benefits. Tennessee Code Annotated section 50-6-204(a)(1)(A) requires that the employer provide medical treatment free of charge for compensable injuries. Here, the evidence established that Ms. Randall will likely prevail at trial in showing that NYPD and its carrier authorized Fast Access to treat her right-knee tears. The Court notes that NYPD's owner reimbursed Ms. Randall for the initial treatment at Fast Access, and the carrier later paid for an MRI ordered by Fast Access.

Likewise, the Court finds Ms. Randall will likely prevail in showing entitlement to the surgery recommended by Dr. Chrostowski. The carrier did not object to Fast Access's referral to Dr. Chrostowski, so he became the treating physician. *See* Tenn. Code App. § 50-6-204(a)(3)(A)(ii). Dr. Chrostowski stated that surgery was necessary to treat the tears in Ms. Randall's right knee, which he also concluded arose primarily out of and in the course of her employment. The employer did not rebut Dr. Chrostowski's opinion. Thus the Court holds that Ms. Randall will likely prevail on the issue of her surgery recommendation.

Finally, the Court considers Ms. Randall's request for temporary disability benefits. The evidence is unrebutted that Ms. Randall has not worked since she saw Dr. Chrostowski on October 23, 2019, and that he continued her off-work status until she has surgery. Thus, the Court holds Ms. Randall will likely prevail in establishing her entitlement to temporary total disability benefits from October 23, 2019, until the date she undergoes surgery. NYPD owes Ms. Randall temporary disability benefits from that date to the present. These benefits shall continue until Ms. Randall undergoes surgery and afterward, if Dr. Chrostowski restricts her from working.

Ms. Randall did not provide sufficient evidence of her compensation rate. The Court questions the accuracy of the wage statement because it is inconsistent with the W-2 submitted by Ms. Randall. Thus, NYPD shall immediately prepare an accurate wage statement and provide it to Ms. Randall's attorney. NYPD shall pay temporary disability benefits at the compensation rate on the revised wage statement. Ms. Randall may file a motion if she wishes to challenge the compensation rate.

**IT IS, THEREFORE, ORDERED** as follows:

1. The Court designates Dr. Chrostowski as the authorized treating physician, and NYPD shall pay for Ms. Randall's treatment, including the recommended surgery.

4

2. NYPD shall pay the medical bills of Fast Access and Dr. Chrostowski. NYPD shall immediately contact their offices to facilitate payment.

3. NYPD shall complete an accurate wage statement documenting Ms. Randall's earnings during the fifty-two weeks preceding the date of injury and file it with the clerk within ten business days of this order, copying Ms. Randall's attorney. NYPD shall pay accrued and ongoing temporary total disability benefits at that rate. Ms. Randall may file a motion if she disagrees with the calculation.

4. This case is set for a Status Hearing on July 15, 2020,, 2020, at 10:00 a.m. Eastern Time. The parties must call (615) 741-3061 or toll-free at (855) 747-1721 to participate. Failure to call might result in a determination of the issues without the party's participation.

5. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3), including compliance of the order to file an accurate wage statement. The Employer or Carrier must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in assessment of a penalty for noncompliance.

6. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email at WCCompliance.Program@tn.gov.

**ENTERED April 14, 2020.**

**JUDGE THOMAS WYATT**
**Court of Workers' Compensation Claims**

5

**APPENDIX**

<u>Exhibits</u>: The Court admitted the following exhibits into evidence:

1. Two affidavits of Amber Randall
2. Affidavit of Dr. John Chrostowski
3. Records, including bills, of Fast Access Healthcare
4. Records, including bills, of Dr. John Chrostowski/Team Orthopedics
5. Letters from The Hartford
6. Wage Statement
7. 2019 W-2 of Amber Randall
8. Photograph of Amber Randall's workspace

<u>Technical record</u>: The Court considered the following filings:

1. Petition for Benefit Determination
2. Records submitted by Amber Randall
3. Wage Statement submitted by NYPD
4. Dispute Certification Notice
5. Request for Expedited Hearing (Decision on the Record)
6. Position statements of Amber Randall
7. Position statement of NYPD
8. Docketing Notice

**<u>CERTIFICATE OF SERVICE</u>**

I certify that a copy of this Order was sent as indicated on April 14, 2020.

| Name | Certified Mail | Email | Service sent to: |
|---|---|---|---|
| Tim Henshaw Employee's Attorney | | X | tim@mcmahanlawfirm.com laura@mcmahanlawfirm.com |
| Blair Cannon Employer's Attorney | | X | Blair.cannon@thehartford.com |

_/s/ Penny Shrum_         w/permission JD
**PENNY SHRUM, COURT CLERK**
**wc.courtclerk@tn.gov**

6